UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

ACUITY MUTUAL INSURANCE          )
COMPANY                          )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Case No. 1:09-cv-157
                                 )        Judge Edgar
DARRELL FRYE and LAFONNE         )
FRYE d/b/a TRINITY LEARNING      )
CENTER                           )
                                 )
        Defendants.              )

## MEMORANDUM AND ORDER

Defendant Darrell Frye owns a building and his wife, defendant Lafonne Frye, used the

building to operate a children's daycare business known as the Trinity Learning Center.  On

February 9, 2009, Darrell Frye and Lafonne Frye doing business as the Trinity Learning Center

suffered a fire loss.  The fire caused substantial damage to the building and the business.  Defendants

made a claim for fire insurance benefits under Policy L82005 issued by plaintiff Acuity Mutual

Insurance Company ("Acuity").  The only named insured on the policy is Darrell Frye doing

business as  Trinity Learning Center.  Acuity investigated and denied the insurance claim.

This case involves a dispute whether the defendants are entitled to recover fire loss benefits

under the insurance policy.  Plaintiff Acuity brings this action for declaratory judgment pursuant to

28 U.S.C. §§  2201-2202 and invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.

Acuity wants the Court to declare the rights of the parties and determine that it is not liable to pay

any fire loss insurance benefits to the defendants under Policy L82005.

1

Defendants counterclaim. Defendants want the Court reform the insurance contract to add Lafonne Frye doing business as Trinity Learning Center as an additional insured. Defendants claim they are entitled under the insurance policy to recover $218,000 for property damage to the building, plus $20,000 for damage to business property, and an additional $125,000 for loss of business income. Defendants also counterclaim to recover the "bad faith" penalty pursuant to Tenn. Code Ann. § 56-7-105. Defendants counterclaim for $1,000,000 in punitive damages on the theory that Acuity engaged in gross, wanton, and malicious conduct in mishandling the insurance claim.

There are two motions before the Court.

I.      **Defendants' Motion to Strike the Plaintiff's Supplemental Brief and Supplemental Affidavit and Exhibits  [Doc. No. 96]**

On March 4, 2010, plaintiff Acuity filed a supplemental brief and other supplemental materials (affidavit of Dennis Parrish and exhibits) in support of its pending motion for summary judgment. [Doc. Nos. 69, 70, 71, 72, 73, 74, 75, 76, and 81]. Defendants move to strike these supplemental filings pursuant to E.D. TN. LR 7.1(d). In the alternative, the defendants move for relief from the scheduling order to be able to respond to Acuity's supplemental filings. Acuity opposes the motion. [Doc. No. 101].

The defendants' motion [Doc. No. 96] will be denied. As a practical matter, it is unnecessary to strike Acuity's supplemental brief and other supplemental materials pursuant to E.D. TN. LR 7.1(d) because they do not persuade the Court that Acuity is entitled to summary judgment under Fed. R. Civ. P. 56. Acuity's supplemental brief and other supplemental materials do not cause any harm or prejudice to the defendants. After reviewing the entire record, including Acuity's supplemental brief and other supplemental materials, the Court has determined that Acuity's

summary judgment motion must be denied.

Instead of granting the defendants' motion to strike, the Court prefers to take into consideration the supplemental affidavit of Acuity's employee Dennis Parrish [Doc. No. 72] because it corroborates and amplifies key facts set forth in the affidavit of Robert Hill [Doc. No. 39, pp. 10-13] concerning the insurance application that Sunbelt Insurance Group, Inc. prepared and submitted to Acuity via the Internet on or about April 20, 2008.

## II.    Plaintiff's Motion for Summary Judgment [Doc. No. 33]

Plaintiff Acuity moves for summary judgment pursuant to Fed. R. Civ. P. 56. [Doc. No. 33]. After viewing the evidence in the light most favorable to the defendants, the Court concludes that the motion must be denied.  There are genuine issues of material fact in dispute that preclude summary judgment and Acuity is not entitled to summary judgment as a matter of law.

### A.    Standard of Review

Summary judgment is proper if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a mater of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).  The central issue is whether the evidence presents a sufficient dispute to require submission to a jury at trial or whether the evidence is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986); *Pennington*, 553 F.3d at 450.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *accord*

*Lovelace v. BP Products North America, Inc.*, 252 Fed. Appx. 33, 39 (6th Cir. 2007); *Talley*, 61 F.3d at 1245. Material facts are only those facts that might affect the outcome of the action under the governing substantive law. The applicable substantive law will identify and determine which facts are material. *Anderson*, 477 at 248; *Lovelace*, 252 Fed. Appx. at 39; *Talley*, 61 F.3d at 1245.

As the moving party, plaintiff Acuity bears the initial burden of demonstrating there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003); *Talley*, 61 F.3d at 1245. If Acuity meets this initial burden, the defendants are not entitled to a trial on the basis of mere unsupported allegations. To defeat a summary judgment motion, the non-moving party is required to come forward with probative evidence to show that a trial is necessary to resolve a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 249; *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007); *Rodgers*, 344 F.3d at 595. A scintilla of evidence is insufficient to preclude summary judgment. There must be evidence on which a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 252; *Van Gorder*, 509 F.3d at 268; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000); *Hartsell v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Talley*, 61 F.3d at 1245.

The Court's role is to determine whether the record contains sufficient admissible evidence from which a jury could reasonably find in favor of the non-moving party. *Anderson*, 477 U.S. at 248; *Rodgers*, 344 F.3d at 595; *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001); *Talley*, 61 F.3d at 1245. The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences of fact in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennington*, 553 F.3d

447, at 450; *Van Gorder*, 509 F.3d at 268; *National Satellite Sports*, 253 F.3d at 907. The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of matters reasonably in dispute. *Anderson*, 477 U.S. at 249; *Talley*, 61 F.3d at 1245.

**B.**     **Facts**

Acuity is a Wisconsin corporation doing business in Tennessee. Darrell Frye and his wife, Lafonne Frye, are citizens and residents of Chattanooga, Tennessee. Darrell Frye owns a building located at 621 Shallowford Road in Chattanooga. Lafonne Frye occupied and used the building to operate a children's daycare business known as the Trinity Learning Center. Lafonne Frye is the sole owner of the Trinity Learning Center.

Darrell Frye purchased the building from Kenneth Gravitt ("Gravitt"). Kenneth and Della Gravitt hold a mortgage lien on the real property. Gravitt referred Darrell Frye to the Sunbelt Insurance Group, Inc. ("Sunbelt") in Chattanooga to obtain liability and fire insurance coverage for the building. It was Darrell Frye's understanding that Gravitt informed Sunbelt that Gravitt held a mortgage on the real property. Sunbelt never asked Darrell Frye whether anyone held a mortgage on the building, and Darrel Frye assumed Sunbelt knew about the mortgage lien held by Kenneth and Della Gravitt.

Darrell Frye had a fire loss prior to February 9, 2009. On May 1, 2005, Darrell Frye suffered a fire loss to a different building located on the same lot at 621 Shallowford Road. The second building where the May 1, 2005, fire occurred was being used for storage and it stands next to the building involved in the instant case. The second building was covered by a fire insurance policy issued by the Old Dominion Insurance Company. Darrel Frye used the insurance proceeds to repair and restore the second building. The second building damaged by fire on May 1, 2005, is not the

same building owned by Darrell Frye that is the subject of the February 9, 2009, fire loss in this case.          With regard to the building involved in the present case that was damaged by fire on February 9, 2009, Darrell Frye and Lafonne Frye obtained fire insurance coverage for the building and the Trinity Learning Center through Sunbelt.  From April 20, 2007, through April 20, 2008, the fire insurance policy was written by the Evanston Insurance Company and the named insured was Lafonne Frye doing business as the Trinity Learning Center.  The application for the policy with the Evanston Insurance Company disclosed Darrell Frye's fire loss on May 1, 2005.  Thus, Sunbelt had information in its records showing that: (1) Lafonne Frye, not Darrell Fye, was doing business as Trinity Learning Center; and (2) Darrell Frye had a prior fire loss on May 1, 2005.

When the policy with the Evanston Insurance Company was getting ready to expire in April 2008, Sunbelt arranged for Darrell Frye and the Trinity Learning Center to obtain a new fire insurance policy from Acuity.  Acuity and Sunbelt had a written agreement whereby Acuity appointed Sunbelt to act as Acuity's agent. [Doc. No. 46-1].  To obtain the fire insurance policy for Darrell Frye and the Trinity Learning Center, Sunbelt completed and submitted an electronic application to Acuity by computer via the Internet on or about April 20, 2008.  Sunbelt did not show the application to Darrell and Lafonne Frye before Sunbelt submitted it to Acuity.  Darrell and Lafonne Frye did not fill out, read, review, approve, or sign the application prepared by Sunbelt. There is no evidence that Darrell and Lafonne Frye had an opportunity to review the application and correct any omissions or false statements made by Sunbelt before the application was sent to Acuity.

Acuity contends there were material misrepresentations and omissions in the application prepared by Sunbelt concerning three matters.  First, Acuity says the application incorrectly stated

the only applicant/insured was Darrell Frye doing business as Trinity Learning Center.  This was incorrect because Darrell Frye owns the building but he does not have an ownership interest in the Trinity Learning Center.  The application omitted Lafonne Frye as an additional insured in her capacity as the owner of the Trinity Learning Center. The application prepared by Sunbelt should have listed two insureds, Darrell Frye as the building owner and Lafonne Frye doing business as Trinity Learning Center.  Second, Acuity contends the application misrepresented that applicant Darrell Frye had no prior fire losses by omitting the information that he had a fire loss on May 1, 2005.  Third, Acuity contends the application misrepresented that there was no mortgage lien on the building by omitting the information that Kenneth and Della Gravitt held a mortgage lien.

Acuity bears the burden of showing there are misrepresentations in the application that resulted in Acuity issuing Policy L820005 effective April 20, 2008 through April 20, 2009.  Acuity has filed what it contends is a copy of the relevant application [Doc. No. 35] but the defendants dispute that the document submitted by Acuity is the correct application.

The application presented by Acuity [Doc. No. 35] is dated July 28, 2008, and it states the applicant is "Darrell Frye Trinity Learning Center."  It provides that the proposed effective date of the policy being applied for is July 31, 2008, with an expiration date of July 31, 2009.  There is a box requesting the applicant to describe the nature of the business operations by premises and the box is filled in with the statement "DAYCARE PROPERTY POLICY # L82005."  The application presented by Acuity dated July 28, 2008, is not signed by Darrell Frye and Lafonne Frye.  The box for the applicant's signature is blank.

Defendants deny this document is the relevant application in dispute in this case.  The application presented by Acuity is dated July 28, 2008, which is three months after Acuity issued

Policy L82005 to Darrell Frye doing business as the Trinity Learning Center effective April 20, 2008 through April 20, 2009. Defendants submit the affidavit of Sunbelt agent Robert Hill ("Hill") [Doc. No. 39, pp. 10-13] who explains the document presented by Acuity is a second, different application made in July 2008 seeking additional liability insurance coverage, not fire insurance coverage. Hill plausibly states that the relevant application submitted to Acuity for insurance Policy L820005 should be dated in April 2008, not July 28, 2008.

The facts surrounding the application to obtain the fire insurance policy from Acuity in April 2008 are discussed in Hill's affidavit. Hill, a licensed insurance agent, has worked for Sunbelt since 1994. Hill was the Sunbelt agent who wrote the insurance business for the Trinity Learning Center. Hill asserts that a Sunbelt customer service representative prepared and submitted applications for insurance to various insurance companies including Acuity. The application to Acuity for fire insurance in April 2008 was done via the Internet by a Sunbelt customer service representative. Hill states that Darrell and Lafonne Frye did not read or sign the application. Darrell and Lafonne Frye did not supply the information and answers to any questions in the application that Sunbelt prepared. The answers in the application concerning the names of the insured, prior fire loss history, and mortgages and liens on the real property were prepared and submitted to Acuity by Sunbelt without any input, assistance, and approval by Darrell and Lafonne Frye.

Hill further states there was a previous fire insurance policy written by Sunbelt with another company, and the previous policy had Lafonne Frye doing business as Trinity Learning Center as the named insured. The application through Sunbelt for the previous policy – the fire insurance policy immediately preceding Policy L82005 issued here by Acuity – showed that Darrel Frye had a fire loss in 2005. Darrell Frye never made any misrepresentations to Hill and Sunbelt about

anything related to the fire insurance policy issued by Acuity on April 20, 2008. The Sunbelt customer service representative (Virginia "Jenni" Ellis) omitted Darrell Frye's 2005 fire loss in the application that Sunbelt prepared and submitted to Acuity in April 2008.

It appears that Sunbelt prepared and submitted the application to Acuity on or about April 20, 2008, based on information derived from Sunbelt's business records concerning the insurance history of Darrell Frye and the Trinity Learning Center. Unfortunately, Sunbelt made mistakes in preparing the application. The application incorrectly listed Darrell Frye doing business as Trinity Learning Center as the only insured. The application omitted Lafonne Frye as an additional insured in her capacity as owner of the Trinity Learning Center. Sunbelt had information in its records showing that Lafonne Frye, not Darrell Fye, was doing business as Trinity Learning Center. The application also omitted the information that Darrell Frye had a prior fire loss on May 1, 2005.

In response to Hill's affidavit, Acuity submits the affidavit of its employee, Dennis Parrish ("Parrish") [Doc. No. 72] which does not contradict Hill's affidavit on this point. According to Parrish, a Sunbelt customer service representative, Virginia "Jenni" Ellis, submitted the electronic application to Acuity for fire insurance via the Internet in mid-April 2008. Parrish attaches to his affidavit a printout of Acuity's SLPI computer screen which is maintained by Acuity as part of its underwriting process. Parrish says the data taken from the SLPI computer printout shows Acuity was falsely informed by Sunbelt that Darrell Frye had no fire losses for the previous three years. Parrish further states: "I reviewed the application information that was uploaded via the Internet by Sunbelt Insurance; the electronic application asks if there has been a fire loss within the past three years. The question is answered no. The uploaded application was uploaded on April 20, 2008." [Doc. No. 72, p. 3 ¶ 3].

One problem is that Parrish and Acuity have not produced and presented to this Court a correct copy of the relevant application submitted to Acuity by Sunbelt via the Internet on or about April 20, 2008. Instead, Acuity merely presents Parrish's description of the application and the SLPI computer screen printout. Viewing the record in the light most favorable to the defendants, the Court finds that Acuity has not presented a correct copy of the relevant insurance application that Sunbelt prepared and submitted to Acuity on or about April 20, 2008, via the Internet. The document presented by Acuity dated July 28, 2008 [Doc. No. 35] is not the relevant application for fire insurance submitted to Acuity by Sunbelt on or about April 20, 2008. The absence of the relevant insurance application undercuts Acuity's motion for summary judgment based on allegations that the April 2008 application contains misrepresentations.

In any event, the record establishes that Darrell Frye and Lafonne Frye did not make or approve any misrepresentations and omissions in the application that Sunbelt prepared and submitted to Acuity on or about April 20, 2008. Any misrepresentations and omissions in the application are the fault of Sunbelt. Although Acuity contends that Sunbelt was acting as the agent of Darrell Frye and Lafonne Frye, the Court finds that Sunbelt acted as Acuity's agent.

Darrell Frye denies that he and Lafonne Frye made any misrepresentations to Sunbelt and Acuity concerning the application to obtain the fire insurance policy in April 2008. There is no evidence that Darrell and Lafonne Frye made any misrepresentations and omissions, or provided any false information, to Sunbelt and Acuity in connection with the application. If there are any misrepresentations and omissions in the application that Sunbelt prepared and submitted to Acuity in April 2008, then Darrell and Lafonne Frye did not know about it, did not approve it, and did not cause it to occur. There is no evidence showing that Darrell and Lafonne Frye knew or believed that

10

Sunbelt would communicate false information to Acuity in the application. Any misrepresentations and omissions in the application submitted to Acuity on or about April 20, 2008, were made by Acuity's agent, Sunbelt, not Darrell and Lafonne Frye.

Acuity accepted the application from Sunbelt, and Acuity issued Policy L82005 to provide fire insurance coverage to the building and business property at the Trinity Learning Center. The effective date of Policy L82005 was April 20, 2008, and it expired on April 20, 2009. The policy names Darrell Frye doing business as Trinity Learning Center as the only insured. Consistent with the application prepared by Sunbelt, the policy does not list Lafonne Frye doing business as the Trinity Learning Center as an additional insured.

When Darrell Frye received insurance Policy L82005 from Acuity after April 20, 2008, he did not notify and inform Acuity that Lafonne Frye doing business as the Trinity Learning Center should be listed as an additional insured on the policy. Darrell Frye did not notify Acuity that the policy should be amended or revised to show that the correct insureds were Darrell Frye as the building owner and Lafonne Frye doing business as Trinity Learning Center . There is no evidence that Darrell Frye read and reviewed insurance Policy L82005 after it was issued to him by Acuity.

On February 9, 2009, a fire occurred at the Trinity Learning Center causing substantial damage to the building and its contents. Defendants made a claim for fire loss insurance benefits under Policy L82005 which has been investigated and denied by Acuity.

Lisa White ("White") is employed by Acuity as a claims adjustor. In her affidavit [Doc. No. 33-5], White states she was assigned to investigate the fire loss claim filed by Darrell Frye. On February 25, 2009, White sent a letter to Darrell Frye requesting that he complete a sworn statement in proof of loss form and return it to White. On March 15, 2009, Darrell Frye executed the form and

returned it to White. Question 6 in the form asks: "is there a mortgage or other encumbrance on any property claimed? If yes, who holds that mortgage or encumbrance and what was its approximate dollar amount on the date of the loss?" Darrell Frye did not answer Question 6. He left the answer section to Question 6 entirely blank. In the statement in proof of loss, Darrell Frye did not make a false statement about the existing mortgage but he also did not disclose to Acuity that Kenneth and Della Gravitt hold a mortgage on the building.

Darrell Frye states the following in his affidavit [Doc. No. 39 p. 9]:

> I never told anyone at Acuity that there was no mortgage. When the
> sworn statement and proof of loss was presented to me, I had no lawyer.
> Lisa White, the adjustor who presented me with the form told me if I
> had any questions, I could call her. I called her on numerous occasions
> to ask her about the questions in the proof of loss. She refused to return
> my calls. She finally called and said I needed to turn it in immediately,
> and I finished the questions I understood and sent them in as she instructed.
> I did not put any untruth on the proof of loss form.

On April 30 and May 1, 2009, an attorney representing Acuity examined Darrell Frye under oath concerning his claim and statement in proof of loss. A transcript of the examination is in the record. [Doc. No. 33-2]. Acuity's counsel asked if there was a mortgage on the building and Darrell Frye truthfully answered that Ken Gravitt holds a mortgage lien. [Doc. No. 33-2, pp. 21-23].

## C.    <u>Substantive Law of Tennessee Governs</u>

This case is before the Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court is required to follow and apply the substantive law of the State of Tennessee in accordance with the controlling decisions of the Supreme Court of Tennessee. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Pennington*, 553 F.3d 447, at 450; *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). If the Tennessee Supreme Court has not directly addressed the relevant issue, then this

Court must determine from all available data what the Tennessee Supreme Court would decide if it was faced with the same issue. *Pennington*, 553 F.3d at 450; *Zeigler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001); *Talley*, 223 F.3d at 327-28; *Monette v. Am-7-7 Baking Co., Inc.*, 929 F.2d 276, 280-81 (6th Cir. 1991). Decisions by the Tennessee Court of Appeals are persuasive, unless it is shown that the Tennessee Supreme Court would decide the issue differently. *Pennington*, 553 F.3d at 450; *Savedoff*, 524 F.3d at 762; *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005).

### D.  Misrepresentations in Application for Insurance; Sunbelt is Acuity's Agent

Acuity contends that Policy L82005 issued to Darrell Frye doing business as Trinity Learning Center effective April 20, 2008, is void *ab initio* because the application contained material misrepresentations which impacted the ability of Acuity to properly assess the risk of loss associated with providing fire insurance coverage to Darrell Frye and the Trinity Learning Center. Acuity contends the application that Sunbelt prepared and submitted to Acuity on or about April 20, 2008, contained three misrepresentations: (1) the application misrepresented that Darrell Frye was the only applicant/insured and omitted Lafonne Frye as an additional insured as the owner of Trinity Learning Center; (2) the application misrepresented that Darrell Frye did not have a prior fire loss and omitted his May 1, 2005, fire loss; and (3) the application misrepresented there was no mortgage lien on the building when in fact Kenneth and Della Gravitt hold a mortgage lien. Acuity argues the insurance policy is void on the theory that these alleged misrepresentations were made by Darrell and Lafonne Frye with the actual intent to deceive and defraud Acuity. In the alternative, Acuity argues the policy is void on the theory that the misrepresentations increased its risk of loss.

Acuity's argument is undercut because it has not produced and presented to this Court a

correct copy of the relevant insurance application that Sunbelt prepared and submitted to Acuity via the Internet on or about April 20, 2008. Assuming *arguendo* that the application contains the misrepresentations alleged by Acuity, the Court concludes that Acuity is not entitled to summary judgment.

Tenn. Code Ann. § 56-7-103 provides:

> No written or oral misrepresentation or warranty made in the nego-
> tiations of a contract or policy of insurance, or in the application
> for contract or policy of insurance, by the insured or in the insured's
> behalf, shall be deemed material or defeat or void the policy or prevent
> its attaching, unless the misrepresentation or warranty is made with
> actual intent to deceive, or unless the matter represented increases the
> risk of loss.

Under Tenn. Code Ann. § 56-7-103 a misrepresentation in an insurance application may be material and serve to void an insurance policy in two different ways. A misrepresentation is material either if it is made with the actual intent to deceive the insurer, or if the matter misrepresented increases the risk of loss to the insurer. *Howell v. Colonial Penn. Ins. Co.*, 842 F.2d 821, 822 (6th Cir. 1987); *Sosebee v. Allstate Ins. Co.*, 2003 WL 21920924, * 5 (E.D. Tenn. May 16, 2003); *Gatlin v. World Serv. Life Ins. Co.*, 616 S.W.2d 606, 608 (Tenn. 1981); *Womack v. Blue Cross and Shield*, 593 S.W.2d 294, 295 (Tenn. 1980); *State Farm General Ins. Co. v. Wood*, 1 S.W.3d 658, 661 (Tenn. App. 1999). If a misrepresentation increases the risk of loss to the insurer, the insurance policy is voidable under § 56-7-103, even if the misrepresentation is innocently made and there is a lack of intent to deceive. *Howell*, 842 F.2d at 822-23; *Sosebee*, 2003 WL 21920924, at * 5.

Whether an insured's answer in an application is a misrepresentation is ordinarily an issue of fact to be determined by the jury at trial. This issue can be decided by the Court if reasonable minds can only reach but one conclusion whether the insured's answer is true or false. *Howell*, 842

F.2d at 823; *Sosebee*, 2003 WL 21920924, at * 4; *McDaniel v. Physicians Mut. Ins. Co.*, 621 S.W.2d 391, 393 (Tenn. 1981); *Gatlin*, 616 S.W.2d at 608; *Womack*, 593 S.W.2d at 295. It is an issue of fact for the jury to determine at trial whether a misrepresentation is made with actual intent to deceive the insurer. *Howell*, 842 F.2d at 823; *Sosebee*, 2003 WL 21920924, at * 5 n. 1; *Womack*, 593 S.W.2d at 295.

Once it has been determined that a misrepresentation exists, it is a question of law for the Court to decide whether the misrepresentation increases the risk of loss to the insurer. *Howell*, 842 F.2d at 823-24; *Sosebee*, 2003 WL 21920924, at * 5; *Womack*, 593 S.W.2d at 295; *Smith v. Tennessee Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. App. 2006); *Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 376 (Tenn. App. 1996); *Spellmeyer v. Tennessee Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. App. 1993); *Sine v. Tennessee Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. App. 1993). A misrepresentation increases the risk of loss when it is of such importance that it naturally and reasonably influences the insurer's judgment in making the insurance contract. *Howell*, 842 F.2d at 824; *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981); *Sosebee*, 2003 WL 21920924, at * 5; *Broyles*, 594 S.W.2d at 693; *Bland*, 944 S.W.2d at 376; *Sine*, 861 S.W.2d at 839; *Wood*, 1 S.W.3d at 662.

Acuity's motion for summary judgment based on alleged misrepresentations in the insurance application that Sunbelt prepared and submitted to Acuity on or about April 20, 2008, must be denied. To the extent Acuity contends that Darrell and Lafonne Frye made misrepresentations in the application with the actual intent to deceive Acuity, the motion fails. The Court on a summary judgment motion under Fed. R. Civ. P. 56 cannot decide whether Darrell and Lafonne Frye acted with the actual intent to deceive Acuity for purposes of applying Tenn. Code Ann. § 56-7-103. It

is an issue of fact for the jury to determine at trial whether any misrepresentations were made with the actual intent to deceive Acuity. *Howell*, 842 F.2d at 823; *Sosebee*, 2003 WL 21920924, at * 5 n. 1; *Womack*, 593 S.W.2d at 295.

Moreover, there are genuine issues of material fact in dispute whether Darrell and Lafonne Frye are responsible for making misrepresentations to Acuity in the insurance application. It was Acuity's agent, Sunbelt, that prepared and completed the application without input from Darrell and Lafonne Frye. Sunbelt did not show the application to Darrell and Lafonne Frye before Sunbelt submitted it to Acuity on or about April 20, 2008. Darrell and Lafonne Frye did not fill out, review, approve, or sign the application that was prepared by Sunbelt. Darrell and Lafonne Frye deny they made any misrepresentations to Sunbelt and Acuity in the application process to obtain fire insurance Policy L82005 from Acuity. If there are any material misrepresentations or omissions in the application submitted to Acuity, then Darrell and Lafonne Frye assert they did not know about it and did not cause it to occur. Viewing the record in the light most favorable to the defendants, any misrepresentations and omissions in the application were caused and created by Sunbelt's mistakes and negligence. In sum, there is no evidence that Darrell and Lafonne Frye made misrepresentations to Sunbelt and Acuity in the application.

Darrell and Lafonne Frye are not responsible for Sunbelt's mistakes and negligence. Sunbelt did not act as the agent for Darrell and Lafonne Frye. Sunbelt acted strictly as Acuity's agent. Acuity and Sunbelt had a written agreement making Sunbelt the agent for Acuity.

Tenn. Code Ann. § 56-6-115(b) provides in pertinent part: "An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the

insured or the insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary." Sunbelt is an insurance producer who solicited and negotiated the application for insurance as Acuity's agent under Tenn. Code Ann. § 56-6-115(b). The purpose of § 56-6-115(b) is to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted and to protect an applicant who relies on the such representations and actions of the insurer's agent. The statute is liberally construed in the insured's favor. *Bill Brown Construction Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991) (discussing former Tenn. Code Ann. § 56-6-147, the predecessor to Tenn. Code Ann. § 56-6-115(b)); *Ralph v. Pipkin*, 183 S.W.3d 362, 371 (Tenn. App. 2005); *Industrial Life & Health Ins. Co. v. Trinkle,* 204 S.W.2d 827 (Tenn. App. 1947).

Defendants contend Sunbelt had actual knowledge and information in its business records concerning three matters: (1) the application for the fire insurance policy should have been made in the name of two insureds, Darrell Frye as owner of the building and Lafonne Frye doing business as the owner of Trinity Learning Center; (2) Darrel Frye had a prior fire loss on May 1, 2005; and (3) there was an existing mortgage on the real property held by Gravitt. Under Tennessee law, the knowledge of agent Sunbelt is imputed to its principal, Acuity. *Bland*, 944 S.W.2d at 376; *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. App. 1982).

If Sunbelt had knowledge of these matters, and if Sunbelt through its own mistakes and negligence made erroneous or untrue statements and omitted the correct information in the application that Sunbelt prepared and submitted to Acuity on or about April 20, 2008, then Acuity and its agent, Sunbelt, are responsible for the statements and representations in the application.

*Bland*, 944 S.W.2d 372; *Vulcan Life & Accident Ins. Co. v. Segars*, 391 S.W.2d 393 (Tenn. 1965); *Transamerica Ins. Group v. Koonce*, 1986 WL 5246 (Tenn. App. May 6, 1986); *Berryhill v. Mutual Ben. Health & Accident Ass'n, Omaha, Neb.,* 262 S.W.2d 878 (Tenn. App. 1953). This is especially true where Darrell and Lafonne Frye did not read, approve, or sign the application. Absent fraud or collusion on the part of Darrell and Lafonne Frye, the mistakes and negligence of agent Sunbelt are attributable to its principal, Acuity. *Driver v. Tennessee Farmers Mut. Ins. Co.*, 505 S.W.2d 476, 478 (Tenn. 1974); *Vulcan*, 391 S.W.2d at 396-98; 44A Am. Jur.2d Insurance §§ 1585, 1586, and 1588.

Where agent Sunbelt acting within the scope of its authority prepares and fills out an application for insurance and Sunbelt makes erroneous or untrue representations in the application without the knowledge, participation, or collusion of the applicants, then Sunbelt's acts, mistakes, and representations in the application are deemed to be those of its principal, Acuity. Acuity cannot void the insurance policy and avoid liability based on the mistakes and misrepresentations made by its agent, Sunbelt. *Bland*, 944 S.W.2d 372; 44A Am. Jur.2d Insurance §§ 1585, 1586, and 1588.

## E.  Insured Presumed to Know Provisions in Insurance Policy and Estoppel

Darrell Frye received insurance Policy L82005 after April 20, 2008. Prior to the fire loss on February 9, 2009, he did not notify Acuity the policy is incorrect and that Lafonne Frye doing business as Trinity Learning Center should be named in the policy as an additional insured. Acuity argues that Darrell and Lafonne Frye are estopped from seeking insurance benefits under the policy on behalf of the true owner of the Trinity Learning Center, Lafonne Frye. Acuity argues that, as a matter of Tennessee law, Darrell Frye is conclusively presumed to have full knowledge of, and to have assented to, all terms, conditions, limitations, provisions, and recitals in the insurance contract,

18

irrespective of whether he read the policy. Acuity cites *Webber v. State Farm. Mut. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001); *General Am. Life Ins. Co. v. Armstrong*, 185 S.W.2d 505, 506-07 (Tenn. 1945); and *De Ford v. National Life & Accident Ins. Co.*, 185 S.W.2d 617, 621-22 (Tenn. 1945). *See also Holloway v. Purdy*, 2009 WL 1362319, * 3 (Tenn. App. May 15, 2009).

Acuity's estoppel argument fails. This general rule of Tennessee law does not afford any relief to Acuity based on the facts in this case. Acuity cannot avoid liability on the insurance policy under an estoppel theory. The Supreme Court of Tennessee holds that "*in the absence of fraud or mistake*, an insured cannot claim that he is not bound by the contract of insurance, or certain provisions thereof, because he has not read it, or is otherwise ignorant of, or unacquainted with its provisions." *Armstrong*, 185 S.W.2d at 506-07 (quoted with approval in *Webber*, 49 S.W.3d at 274) (emphasis supplied). Acuity's agent, Sunbelt, made a mistake in preparing the insurance application by omitting Lafonne Frye doing business as Trinity Learning Center as an additional applicant/insured. Darrell and Lafonne Frye did not make the mistake in the application and they are not responsible for Sunbelt's mistake.

The answer to this issue is found in *Berryhill*, 262 S.W.2d 878, where the Tennessee Court of Appeals examined and followed an unpublished opinion, *National Life & Accident Ins. Co. v. Blackburn*, decided on March 26, 1949, wherein Judge Felts of the Tennessee Court of Appeals wrote:

> The insured and plaintiff had told the agents of defendant [insurance company] all they knew about his condition, his past ailments, and treatments by the local doctor; and they had no reason to suppose that the agents had not given their principal every material fact for it to know; nor had they any ground to suppose that any of such matters as were material had not been properly recorded in the application.
>
> In these circumstances we think there was no duty upon the insured to

search among the numerous provisions of the policy and the application and try to discover whether the latter contained any material misrepresentations. As a matter of fact, no layman would be equal to such a task. No one could know what constituted a material misrepresentation unless he was thoroughly familiar with the numerous decisions and discussions in textbooks dealing with that question. Courts in most jurisdictions take judicial notice of the fact that it is customary for insureds to accept policies and keep them without reading them. Vance on Insurance, 2d Ed., 214-224, and numerous cases there cited.

The principal of the Trinkle case, supra, and prior cases, is that in the absence of fraud the knowledge of the agent is imputed to the insurer and where the insurer issues and delivers a policy with knowledge of matters which, if insisted on, would invalidate the policy in its inception, the insurer is held to have waived such matters and is estopped to rely upon them to forfeit or avoid the policy.

After waiving such matters and being estopped to rely on them, how can the insurer say the insured owes it a duty to explore the policy and the application to discover such matters and to disclose them to it? How can it say the insured still owes it a duty to inform it again of matters which in the eye of the law it already knows and has waived? It seems to us that to hold that there is such a duty would be to throw out the whole of the law of waiver and estoppel in life insurance.

It is true there are many cases containing dicta to the effect that there is such a duty on the insured. But generally they are cases where the insured was guilty of actual fraud and where there was no waiver or estoppel operative against the insurer. (Citations omitted).

*Berryhill*, 262 S.W.2d at 879-80 (quoting *National Life & Accident Ins. Co. v. Blackburn*).

This principle from *Berryhill* applies in the instant case. The Court rejects Acuity's argument that the defendants are estopped from seeking fire loss insurance benefits under the policy on behalf of Lafonne Frye as the owner of Trinity Learning Center merely because Darrell Frye received the insurance policy and did not notify Acuity. Like the situation described in the above quote from *Berryhill*, 262 S.W.2d at 879-80, Darrell and Lafonne Frye had no reason to believe or suppose that Sunbelt would make a mistake in the application by omitting Lafonne Frye doing

business as Trinity Learning Center as an applicant/insured.  Sunbelt had information in its records showing that Lafonne Frye doing business as Trinity Learning Center was to be included in the application and named in the insurance policy as an additional insured.  Sunbelt acted as Acuity's agent in preparing the application and the knowledge of agent Sunbelt is imputed to Acuity.  *Bland*, 944 S.W.2d at 376; *Griffith Motors*, 633 S.W.2d at 322.  Acuity is responsible for Sunbelt's actions and mistake.  Acuity is estopped from relying on Sunbelt's mistake and the representations made by Sunbelt in the application to avoid liability on the fire insurance policy.  *Berryhill* teaches us that insured Darrell Frye did not owe a duty to insurer Acuity to explore the application and insurance Policy L82005 to discover Sunbelt's mistake and notify Acuity about the mistake of its agent, Sunbelt.

**F.**     **Agency Principles and Ratification of Insurance Policy; Defendants' Counterclaim for Reformation of Insurance Contract**

Acuity next argues that by making their counterclaim to recover fire loss benefits under the insurance policy, Darrell and Lafonne Frye have ratified Policy L82005 and they cannot obtain reformation of any terms and provisions in the insurance contract.  Acuity cites *Webber*, 49 S.W.3d at  272, in support of its ratification argument.  Acuity contends that Darrell and Lafonne Frye are not allowed to seek reformation of insurance Policy L82005 to add Lafonne Frye, the true owner of Trinity Learning Center, as an additional named insured.

Acuity's ratification argument fails.  Acuity misreads *Webber* and does not correctly apply it to the present case.  *Webber* is readily distinguishable on the facts and the law from the present case.  *Webber* did not involve a mistake and misrepresentations in an insurance application and insurance contract caused by the insurance company's agent.

21

The analysis in *Webber* is based on agency law where a principal is deemed to have ratified an unauthorized contract entered into by the principal's agent when the principal brings a lawsuit to enforce the contract. *Webber*, 49 S.W.3d at 269-75. By relying on *Webber*, Acuity seeks to miscast Darrell and Lafonne Frye in the role of principals who, by bringing the counterclaim against Acuity to recover fire loss benefits under the insurance policy, are ratifying the actions of their purported agent, Sunbelt. Acuity's ratification argument is predicated on the false premise that Sunbelt acted as the agent of Darrell and Lafonne Frye when Sunbelt prepared and submitted the application for insurance to Acuity on or about April 20, 2008. This underlying premise is simply not correct.

*Webber* is not applicable here because Darrell and Lafonne Frye are not seeking to ratify any unauthorized actions committed by one of their agents. Darrell and Lafonne Frye were not represented by an agent with regard to the preparation and completion of the application and the issuance of the insurance policy by Acuity. Sunbelt did not act as the agent for Darrell and Lafonne Frye when Sunbelt prepared and submitted the fire insurance application to Acuity.

The defendants' counterclaim seeks reformation of the insurance contract due to the mistake of Acuity's agent, Sunbelt. Darrell and Lafonne Frye doing business as Trinity Learning Center desired and intended to apply for and obtain a fire insurance policy from Acuity through Sunbelt. It can reasonably be inferred that Sunbelt intended to apply for and obtain fire insurance for Darrell Fry and whoever owned and was doing business as Trinity Learning Center. Sunbelt is at fault for mistakenly listing Darrell Frye doing business as Trinity Learning Center in the application as the only applicant/insured. The application prepared by Sunbelt should have stated and represented that there were two applicants/insureds, namely Darrell Frye as building owner and Lafonne Frye doing

business as Trinity Learning Center. Sunbelt made a mistake and omitted Lafonne Frye from the application as an additional applicant/insured. Acuity is responsible for the acts and mistakes of its agent, Sunbelt.

Darrell and Lafonne Frye may counterclaim for equitable reformation of the Acuity fire insurance contract due to Sunbelt's mistake. *Phillips v. North River Ins. Co.*, 14 Tenn. App. 356, 1931 WL 1606 (Tenn. App. 1932); 2 Couch on Insurance 3d. ed § 27.19, act of soliciting agent sufficient to justify reformation of insurance contract. Reformation of a contract is an equitable remedy applicable to insurance contracts where there is a mutual mistake of the parties. *Cincinnati Ins. Co. v. Post*, 747 S.W.2d 777, 781 (Tenn. 1988); *E.K. Hardison Seed Co. v. Continental Cas. Co.*, 410 S.W.2d 729 (Tenn. App. 1967); *Russell v. Security Ins., Inc.*, 1999 WL 74787, * 1 (Tenn. App. Feb. 18, 1999); *Phillips*, 14 Tenn. App. 356; 15 Tennessee Jurisprudence, Insurance, § 41, reformation or modification of insurance policy. An insurance policy may be reformed after the loss has actually occurred. *E.K. Hardison Seed*, 410 S.W.2d at 732; *Phillips*, 14 Tenn. App. 356. The party seeking reformation of a contract is required to prove the grounds therefor and the mistake by clear and convincing evidence. *Cincinnati Ins. Co.*, 747 S.W.2d at 781; *E.K. Hardison Seed*, 410 S.W.2d at 732; *Russell*, 1999 WL 74787, at * 1.

The Court expresses no opinion here whether Darrell and Lafonne Frye will prevail on their counterclaim for equitable reformation of the insurance policy. The parties have not briefed the applicable law on the question of reformation. Before the Court can decide the question, it must hear the evidence at trial.

### G.     Statement in Proof of Loss and Disclosure of Mortgage Lien on the Building

Finally, Acuity argues that after the fire loss on February 9, 2009, Darrell Frye made a

misrepresentation by not disclosing to Acuity that Kenneth and Della Gravitt held a mortgage lien on the building. Acuity contends Darrell Frye breached Section E.3.(7) of Policy L82005 which provides that in the event of loss or damage, the insured has a duty to send Acuity a signed, sworn statement in proof of loss containing the information that Acuity requests to investigate the claim. [Doc. No. 33-1, p. 13].

On March 15, 2009, Darrell Frye executed the sworn statement in proof of loss form and returned it to Acuity. Question 6 in the form asks: "is there a mortgage or other encumbrance on any property claimed? If yes, who holds that mortgage or encumbrance and what was its approximate dollar amount on the date of the loss?" Darrell Frye did not answer Question 6. He left the answer section to Question 6 entirely blank. On April 30 and May 1, 2009, Acuity's attorney examined Darrell Frye under oath concerning his statement in proof of loss. When Acuity's counsel inquired if there was a mortgage on the building damaged by the fire, Darrell Frye truthfully answered that Ken Gravitt holds a mortgage lien. [Doc. No. 33-2, pp. 21-23].

Darrell Frye asserts he never made a false statement or misrepresentation to Acuity that there was not a mortgage lien on the building. Darrell Frye says Sunbelt had knowledge of the mortgage lien held by Ken Gravitt. It is not clear from the record whether Sunbelt had knowledge of the mortgage lien and this issue of fact is in dispute. If Sunbelt had knowledge of the mortgage lien when it prepared and submitted the application to Acuity, then such knowledge would be imputed to Acuity because Sunbelt is Acuity's agent.

Darrell Frye contends he answered those questions in the proof of loss form that he understood. He attempted to contact Acuity's claims adjustor, White, to ask her questions about how to complete the form but White failed or refused to return his telephone calls. When White

urged Darrell Frye to expedite completion of the form and immediately return it, he signed the form and mailed it back to White without answering Question 6. It appears that Darrell Frye had no motive or reason to make a misrepresentation to Acuity concerning the mortgage lien, and he disclosed the mortgage lien to Acuity's attorney when asked about it.

Based on these facts, the Court cannot grant summary judgment in Acuity's favor on the ground that Darrell Frye allegedly made a misrepresentation and breached the insurance contract by not answering Question 6 in the proof of loss form and by not disclosing the mortgage lien. This issue will have to be resolved at trial.

**III.    Conclusion**

Accordingly, the defendants' motion to strike plaintiff Acuity's supplemental filings pursuant to E.D. TN. LR 7.1(d), and the defendants' alternative motion for relief from the scheduling order, [Doc. No. 96] are **DENIED**. Plaintiff Acuity's motion for summary judgment [Doc. No. 33] is **DENIED**.

SO ORDERED.

ENTERED this 22nd day of March, 2010.


            */s/ R. Allan Edgar*
            R. ALLAN EDGAR
            UNITED STATES DISTRICT JUDGE