UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ACUITY MUTUAL INSURANCE )
COMPANY, )
 )
      Plaintiff, )
 )     1:09-CV-157
v. )     *Edgar / Lee*
 )
DARRELL FRYE and LAFONNE FRYE, )
 )
      Defendants. )

## **ORDER**

**I.**    **Introduction**

Before the Court is Plaintiff's motion to allow access to records maintained by various governmental entities [Doc. 66]. Specifically, Plaintiff seeks access to "tax records" of Defendants, "all records maintained by the State of Tennessee relating to [Defendants]," and the social security records of Defendant Darrell Frye ("Mr. Frye"). Defendants filed a response arguing there was no authority in the federal rules supporting the motion [Doc. 99], and a hearing on the fully briefed motion was held on March 26, 2010.

As Defendants point out, a motion to compel "access" to records maintained by non-parties has no basis in the Federal Rules of Civil Procedure.[1] Accordingly, Plaintiff's motion, insofar as it seeks to compel discovery from a non-party, has no merit. At the hearing, however, Plaintiff

---

[1] A motion to compel the production of documents is proper when a *party* fails to comply with the discovery request. *See* Fed. R. Civ. P. 37(a)(3)(iv) (failure to respond to a request for production of documents will enable a party to move to compel); Fed. R. Civ. P. 34 (providing that requests for production of documents may be served "on any other party"). In contrast, a subpoena is the proper vehicle for seeking documents from a non-party. Fed. R. Civ. P. 45 (a subpoena to produce documents may be directed to a "person").

argued that the motion should be construed as one to compel Defendants to sign consent forms authorizing the release of the records, and the Court will construe it as such.

Plaintiff clarified during the hearing that the motion for access to "tax records" seeks the production of federal and state tax returns. Plaintiff requested those records in its first set of requests for production of documents, which Mr. Frye answered in November, 2009, by stating they were "[a]lready produced."[2] With respect to the second category of records, "all records maintained by the State of Tennessee," Plaintiff clarified that the motion seeks production of records in the custody of the Tennessee Department of Revenue and perhaps the Department of Human Services. Plaintiff was unable to identify specific discovery requests for these records other than requests for tax records. Plaintiff did not ask for Mr. Frye's social security records in its requests for production of documents. Nor did Plaintiff pursue a motion to compel with respect to any of these categories of documents, choosing instead to file the instant motion on March 3, 2010.

Shortly before filing the instant motion, Plaintiff provided consent forms to Defendants for the release of records held by the Tennessee Department of Human Services, the Tennessee Department of Revenue, and the Social Security Administration, but not the federal Internal Revenue Service. Defendants refuse to sign the release for social security records, but based on representations of the parties at the hearing and communications subsequently received by the Court, it appears the parties have reached agreement with respect to the state-maintained records.[3] Thus,

---

[2] Plaintiff submitted its first set of requests for production of documents to Mr. Frye and Mr. Frye's responses as an exhibit at the hearing. Request 1 asks for "personal federal income tax returns" for years 2002 through 2008, and request 13 asks for "tax records . . . which support any claim for damages set forth by you in your Counter-Claim."

[3] Plaintiff provided Defendants with a consent form for "all state tax returns and all state filings related to Trinity Learning Center . . . for the time period of January 2001 through the present

two categories of documents remain at issue: federal tax records for both Defendants (for which Plaintiff has not provided Defendants with a consent form) and social security records for Mr. Frye.

**II.     Analysis**

Initially, the Court finds both categories of records to be discoverable. Plaintiff seeks a declaratory judgment against Mr. Frye, its insured, alleging, *inter alia*, it has no coverage obligation for fire loss because the fire was intentionally set. The records sought appear at least reasonably likely to lead to the discovery of admissible evidence on the issue of Defendant's financial motive, making the records discoverable. *See* Fed. R. Civ. P. 26(b)(1). That finding is only the beginning of the inquiry, however, because Rule 26(b) is not self-executing. A party who seeks discoverable information, other than initial disclosures, must utilize the mechanisms provided in the federal rules.

Those discovery mechanisms are available until truncated by the Court's scheduling order, which ordinarily requires discovery be completed long before trial. Modifying the Court's original scheduling order, however, the parties to this case agreed that discovery could be taken up to the date of the final pretrial conference, April 5, 2010, but only so long as the extension of discovery deadline did not delay the trial date [Doc. 6, 38].[4] In other words, the parties made a strategic choice to permit discovery until the last possible moment with full knowledge that if discovery were not completed, the trial would nevertheless proceed as planned. With respect to the instant motion, the

---

date . . . ." At the hearing, Defendants represented they would sign the releases for the state-maintained records, but only from 2005 to the present. Following the hearing, Plaintiff informed the Court it would limit its request accordingly. While Defendants have agreed to sign the releases, failure of the agencies to provide the requested records before the trial will not be grounds for delaying the trial.

[4] The original scheduling order provided that all discovery was to be completed by October 29, 2009 [Doc. 6]. That deadline was extended to November 30, 2009, due to Defendants' failure to timely file their final witness list [Doc. 31].

Court cannot grant Plaintiff any relief because Plaintiff failed to invoke the formal discovery process early enough to achieve its purposes.

Discovery of government records without the cooperation of the person whose records are sought can be an arduous process. First, the party seeking discovery makes a formal request for the records, and then the opposing party has thirty days to respond to the request. Fed. R. Civ. P. 34(b)(2)(A). If the records are not produced, of course, the party seeking discovery may move to compel. Fed. R. Civ. P. 37(a)(3)(B)(iv). The non-moving party then has 14 more days to respond to the motion to compel. LR 7.1(a). If the motion is meritorious, the court may then order the non-moving party to produce the records and to provide whatever consent is necessary for their release. *See Uszak v. Yellow Transp., Inc.*, 343 F. App'x 102, 108 (6th Cir. 2009); *Patterson v. Kim*, 2009 WL 1911819, at *2 (W.D. Mich. 2009). Even if the motion is granted, still more time will be necessary--perhaps 30 days or more in the case of social security records--to obtain the records from the agency [*See* Doc. 122-1] (letter from Social Security Administration ("SSA")).

Given these hurdles, if Plaintiff wanted to access all these records, Plaintiff should have begun the process by requesting their production long before the deadline for completion of discovery. Plaintiff did not do so. Consequently, the motion will be denied with respect to both categories of records at issue.

1.      **Federal Tax Records**

As noted, Plaintiff received a response to its request for production of tax records in November, 2009. Had Plaintiff been unsatisfied with the response it received, the appropriate recourse would have been to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iv). But Plaintiff did not move to compel further production, choosing instead to file the instant motion on March 3,

4

2010. Plaintiff claims it only recently learned the information was incomplete when deposing Mr. Frye on February 18, 2010, but Plaintiff has offered no compelling explanation why it failed to depose a party to the case until this late date--almost four months past the original deadline for the completion of discovery. Moreover, Plaintiff has not even provided Defendants with the consent forms it now seeks to compel them to sign. If the Court were to grant the motion to compel and allow any reasonable time for Defendants to comply, the records could not be procured prior to the deadline for completion of discovery. And even if they could be produced, all of the deadlines for filing exhibit and witness lists have expired [Doc. 6].

2. **Social Security Records**

Nor will the Court compel Mr. Frye to authorize the release of his social security records. Paradoxically, while Plaintiff's motion was filed extremely late in the discovery process, it is nonetheless premature because Plaintiff never formally requested that Mr. Frye produce social security records. *See Patterson*, 2009 WL 1911819, at *2 (motion to compel party to sign a release was premature "in the absence of an outstanding request to produce the records"); *Sithon Maritime Co. v. Holiday Mansion*, 1998 WL 182785, at *2 (D. Kan. 1998) (explaining that informal discovery requests do not meet the prerequisites of Rule 34). Even had Plaintiff made such a request, however, the instant motion comes too late. As with the federal tax records, the social security records simply cannot be procured before the discovery deadline. Again, even if they could be produced, all of the deadlines for filing exhibit and witness lists have expired.

For the foregoing reasons, therefore, Plaintiff's motion to access records [Doc. 66] is **DENIED**. This order does not address the issue of admissibility of evidence at trial.

In addition, Defendant filed a motion to quash a subpoena issued by Plaintiff to the SSA for

the production of Mr. Frye's records [Doc. 104]. That motion is **DENIED** as moot. The SSA has responded to the subpoena, stating it will not produce documents without a signed release and advising it would need 30 days to produce the records upon receipt of the executed release [Doc. 122-1]. Plaintiff did not attempt to compel the SSA to obey the subpoena. Because the Court will not compel Defendant to execute the release, Defendant has no need to quash the subpoena.

SO ORDERED.

ENTER:

                                                                                                                                     *s/Susan K. Lee*
                                                                                                                                     SUSAN K. LEE
                                                                                                                                     UNITED STATES MAGISTRATE JUDGE