UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


ACUITY MUTUAL INSURANCE )
COMPANY )
)
      Plaintiff, )
)
v. )     Case No. 1:09-cv-157
)     Judge Edgar
DARRELL FRYE and LAFONNE )
FRYE d/b/a TRINITY LEARNING )
CENTER )
)
      Defendants. )


## MEMORANDUM AND ORDER

The jury returned a verdict finding that Darrell Frye did not intentionally set fire to the insured building. The jury awarded the following damages to Darrell and LaFonne Frye on their counterclaim under the fire insurance policy. The jury found that: (1) Darrell Frye proved the reasonable value of the fire loss and damage to the insured building is $35,000; (2) LaFonne Frye proved the reasonable value of the fire loss and damage to her business property in connection with the Trinity Learning Center is $4,500; and (3) LaFonne Frye proved loss of business income from the Trinity Learning Center in the amount of $18,000.

The Court entered a judgment in accordance with the jury's verdict. [Doc. No. 185]. There are two post-judgment motions before the Court.

## I.   Acuity's Motion for Judgment Notwithstanding the Verdict and/or Motion to Alter or Amend Judgment [Doc. No. 189]

Acuity Mutual Insurance Company ("Acuity") moves for judgment as a matter of law

notwithstanding the jury's verdict on the issues of arson and damages. Acuity argues that the evidence at trial conclusively proves the fire was deliberately set by Darrell Frye. Because diversity jurisdiction is invoked under 28 U.S.C. § 1332, this Court applies the standard under Tennessee state law for determining when judgment as a matter of law notwithstanding the verdict is appropriate. *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006); *Greene v. B.F. Goodrich Avionics Sys.,Inc.,* 409 F.3d 784, 788 (6th Cir. 2005); *Gafford v. General Electric Co.,* 997 F.2d 150, 170 (6th Cir. 1993); *J.C. Wyckoff & Assocs v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1482 (6th Cir. 1991); *Grantham and Mann, Inc. v. American Safety Products, Inc.,* 831 F.2d 596, 602 (6th Cir. 1987).

The Court must take the strongest legitimate view of the evidence in favor of Darrell and LaFonne Frye, allow all reasonable inferences in their favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the evidence as a whole. The motion should not be granted except where reasonable minds could draw but one conclusion from the evidence. *Grantham,* 831 F.2d at 602; *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 130-31 (Tenn. 1977); *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993); *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). The Court may not assess the credibility of witnesses. *Mairose v. Federal Express Corp.*, 86 S.W.3d 502, 511 (Tenn. Ct. App. 2002); *Mullins v. Seaboard Coastline Ry. Co.*, 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974).

Applying this standard of review, Acuity's motion for judgment as a matter of law notwithstanding the jury's verdict must be denied. The Court has considered all of the evidence presented at trial in the strongest legitimate view in favor of Darrell and LaFonne Frye, allowed all

reasonable inferences in their favor, and discarded all countervailing evidence. The motion fails because there is reasonable doubt as to the findings and conclusions to be drawn from the evidence as a whole. The evidence at trial was not all one-sided and was not entirely in favor of Acuity.

Acuity's theory is that Darrell Frye: (1) crawled into the enclosed ceiling above the second floor of the two-story building where he deliberately set the fire using some type of accelerant or petroleum-based ignitible liquid such as lighter fluid; (2) crawled back out of the ceiling; (3) activated the smoke and heat detection systems; and (4) locked the door and left the premises.

Based on the evidence at trial, a reasonable jury could reject Acuity's theory. It would be reasonable for the jury to determine that it is implausible or unlikely that Darrell Frye intentionally set the fire.

Darrell Frye testified that he did not deliberately set the fire. The fire started inside the enclosed ceiling above the second floor. Ordinarily, people bent on committing arson do not crawl into enclosed ceilings to set fires. The timing and circumstances of the fire raise legitimate questions about whether Darrell Frye could have had sufficient time to set the fire in the enclosed ceiling and then make his escape without quickly triggering the building's fire alarm. The building's smoke and heat detection systems were on and operating at the time of the fire. The Chattanooga Fire Department has a fire station located one city block away from the burned building. The building's smoke and heat detection systems were activated by the fire and sent an alarm to the fire station. The Chattanooga Fire Department promptly responded to the alarm and put out the fire. It is reasonable to infer that Darrell Frye would have needed more time to have an opportunity to get away from the premises before the fire alarm would be triggered so as to avoid being seen or caught committing arson.

Lieutenant Terrence Andrews from the Chattanooga Fire Department testified that he responded to the fire. When Lieutenant Andrews went inside the building, he did not smell the presence of any accelerant. There is nothing in the Chattanooga Fire Department's official report about an accelerant such as lighter fluid being involved in starting the fire.

Darrell Frye presented expert testimony from a competent fire cause-and-origin investigator, Jerry Carter ("Carter"). Carter testified that in his expert opinion the exact cause and origin of the fire could not be determined because plaintiff Acuity's experts removed significant amounts of electrical wiring from the burned building before Carter began his investigation. Carter could not eliminate the possibility that the fire was caused by defective electrical wiring. In the final paragraph of his report [Defendant's Trial Exhibit 2, p. 6], Carter states: "Although no definitive cause of this fire can be related to an electrical malfunction within the enclosed ceiling space because of the alterations by prior investigators, no evidence was found to conclude that this fire was incendiary in nature."

Acuity's motion for judgment as a matter of law notwithstanding the jury's verdict will be denied because reasonable persons could draw more than one conclusion from the evidence. The jury was entitled to believe and give credence to the testimony of Darrell Frye and his expert witness, Carter. A reasonable jury could find that Acuity did not meet its burden of proving by a preponderance of the evidence that Darrell Frye intentionally set the fire.

Acuity speculates about the jury's deliberations and reasons for reaching its verdict. While the jury was deliberating, the courtroom deputy clerk noticed that one juror had temporarily exited the jury room and was visibly upset. This juror was directed to return to the jury room to continue participating in the deliberations. The Court informed counsel for the parties about this incident.

The actual cause or reason for the juror being upset is unknown. It is not known whether the juror was in ill health, or upset about personal problems, or upset about something concerning the jury's deliberations. When the jury returned its verdict, the Court polled the jury. Each individual juror affirmed that it was his or her verdict. Every member of the jury affirmed that they had reached a unanimous verdict that Darrell Frye did not intentionally set fire to the building.

Plaintiff Acuity makes the following argument:

> Based upon the totality of the circumstances it is easy to conclude that nine jurors believed that Acuity proved Mr. Frye burned the building and these jurors did not want to award Mr. Frye damages. It is obvious that one juror did not believe Acuity proved its case and wanted to award damages – it is logical to conclude that this juror may have believed Mr. Frye burned the building but did not want to hold Mrs. Frye accountable for Mr. Frye's actions. It is also logical to conclude that the nine jurors, in order to give a verdict, finally agreed with the one holdout juror but insisted that damages be reduced because they believed Mr. Frye burned his building. If the jury verdict was reduced for these reasons, then this Court should examine the evidence in its entirety, set aside the verdict, and enter a judgment notwithstanding the jury verdict in favor of Acuity. As a 13th juror, the Court can review the evidence presented in this case and enter a judgment notwithstanding the verdict in Acuity's favor.

[Doc. No. 190, pp. 5-6].

This argument fails. The Court declines to engage in speculation and conjecture concerning the jury's deliberations. Courts do not speculate whether jury verdicts are the result of compromise. 75B Am. Jur.2d Trial § 1542 Compromise verdicts (2007). Moreover, Acuity asks the Court to act as a "13th juror" and weigh the evidence. In reviewing the motion for judgment as a matter of law notwithstanding the verdict, the Court does not act as a "13th juror." The Court may not assess the credibility of the witnesses. *Mairose*, 86 S.W.2d at 511; *Mullins*, 517 S.W.2d at 201. Acuity's motion for judgment as a matter of law notwithstanding the jury's verdict is **DENIED**.

In the alternative, Acuity moves to alter or amend the judgment pursuant to Fed. R. Civ. P.

59(e). The Court may grant a Rule 59(e) motion to alter or amend judgment only if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009); *Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479, 496 (6th Cir. 2006); *Intera Corp. v. Henderson*, 428 F.3d 606, 620 (6th Cir. 2005); *GenCorp., Inc. v. Am. Int'l Underwriters Co.*, 178 F.3d 804, 834 (6th Cir. 1999).

Acuity's motion to alter or amend the judgment is **DENIED**. The Court finds that Acuity has not met its burden of showing that it is entitled to relief under Rule 59(e). Acuity has not established that the Court committed a clear error of law. There is no newly discovered evidence and no intervening change in controlling law. The Court is not persuaded that it is necessary to alter or amend the judgment to prevent a manifest injustice.

## II.    Motion by Darrell and LaFonne Frye for New Trial on Damages or Suggestion of Additur [Doc. No. 186]

Pursuant to Fed. R. Civ. P. 59(a)(1)(A) Darrell and LaFonne Frye move to partially vacate or set aside the judgment and for a new trial solely on the issue of damages. In the alternative, they move the Court to suggest an additur to the damages awarded by the jury's verdict pursuant to Tenn. Code Ann. § 20-10-101. [Doc. No. 186]. They argue that: (1) the jury's verdict is inadequate to compensate them; (2) the verdict is contrary to the evidence presented at trial; and (3) there is not sufficient or substantial evidence tending to support the amount of damages awarded in the verdict.

Darrell and LaFonne Frye argue that they proved they are entitled to recover damages up to the maximum limits of coverage in the fire insurance policy. The insurance policy provides coverage for fire loss to the insured building owned by Darrell Frye up to a maximum of $218,500.

The policy provides coverage for fire loss to the business property of the Trinity Learning Center up to a maximum limit of $20,000. The policy also provides coverage for loss of business income derived from the Trinity Learning Center up to a maximum of $125,000.

Acuity opposes the motion. [Doc. No. 188]. Acuity argues that a new trial should not be granted solely of the issue of damages. If the Court is inclined to grant a new trial, then Acuity wants a new trial on the entire case and the issues of both damages and liability, i.e. whether Darrell Frye intentionally set fire to the insured building. Acuity contends that a new trial solely on damages would assume liability and the jury would not hear Acuity's evidence concerning its claim that Darrell Frye intentionally set fire to the insured building. Acuity says there is no reason to bifurcate the trial on the issues of liability and damages.

This argument by Acuity fails. Fed. R. Civ. P. 59(a)(1)(A) provides that the Court in its discretion may grant a new trial on all or some of the issues and to any party "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Under Rule 59(a)(1)(A) the Court has the authority to grant a new trial solely on the issue of damages. *Adam v. J.B. Hunt Transport, Inc.,* 130 F.3d 219, 226 (6th Cir. 1997); *Davis v. Yovella*, 110 F.3d 63 (Table, text in 1997 WL 159363, ** 3-4 (6th Cir. April 2, 1997)). The Court is not persuaded that a new trial is necessary on the issue whether Darrell Frye intentionally set fire to the insured building. The jury returned a unanimous verdict finding that Darrell Frye did not intentionally set fire to the insured building. The jury's verdict is reasonable and supported by substantial evidence. Because a reasonable jury could reach the verdict that Darrell Frye did not intentionally set fire to the insured building, the Court may not grant a new trial on this issue.

Acuity again asks the Court to indulge in speculation about the jury's deliberations. As

discussed *supra*, Acuity speculates that a majority of the jurors felt that the fire was intentionally

set by Darrell Frye and the majority agreed to a compromise verdict with one holdout juror. Acuity

contends that the jury compromised by reducing the amount of damages because the majority of

jurors felt that the fire was intentionally set by Darrell Frye. The Court cannot indulge in such

speculation and conjecture about the jury's deliberations.

**A.      Motion for Suggestion of Additur Under Tenn. Code Ann. § 20-10-101**

Darrell and LaFonne Frye move the Court to suggest an additur to the compensatory

damages awarded by the jury's verdict pursuant to Tenn. Code Ann. § 20-10-101 which provides

in part:

> (a)(1)  In cases where, in the opinion of the trial judge, a jury verdict is
> not adequate to compensate the plaintiff or plaintiffs in compensatory
> damages or punitive damages, the trial judge may suggest an additur in
> such amount or amounts as the trial judge deems proper to the compen-
> satory or punitive damages awarded by the jury, or both such classes of
> damages.
>
> (2)  If the additur is accepted by the defense, it shall then be ordered by the
> trial judge and become the verdict, and if not accepted, the trial judge shall
> grant the plaintiff's motion for a new trial because of the inadequacy of the
> verdict upon proper motion being made by the plaintiff.
>
> (b)(1)  In all jury trials had in civil actions, after the jury verdict has been
> rendered and on motion for new trial, when the trial judge is of the opinion
> that the verdict in favor of a party should be increased and an additur is
> suggested by the trial judge on that account, with the proviso that in case
> the party against whom the verdict has been rendered refuses to make the
> additur, a new trial will be awarded, the party against whom such verdict
> has been rendered may make such additur under protest, and appeal from the
> action, and appeal from the action of the trial judge to the court of appeals.

The Court will not make a suggestion of additur pursuant to Tenn. Code Ann. § 20-10-101.

The Seventh Amendment to the United States Constitution generally prohibits federal courts from

granting additur after trial to increase the amount of damages awarded by a jury's verdict. *Dimick*

*v. Schiedt*, 293 U.S. 474, 486-87 (1935), *Jimkoski v. State Farm Mutual Automobile Ins. Co*., 247 Fed. Appx. 654, 663 (6th Cir. 2007); *Tezak*, 33 Fed. Appx. at 177-78; *Clay v. Gordon*, 205 F.3d 1339 (Table, text in 2000 WL 191936, * 3 (6th Cir. Feb. 10, 2000)); *Strunk v. Hurley*, 865 F.2d 261 (Table, text in 1988 WL 134500, * 2 (6th Cir. Dec. 16, 1988)); *Traylor v. United States*, 396 F.2d 837, 840 n. 4 (6th Cir. 1968).

Some federal courts recognize a narrow exception to the *Dimick* rule when the parties consent to additur or the amount of damages is undisputed. *Clay*, 2000 WL 191936, at * 3. The exception to the *Dimick* rule is not applicable in this case because Acuity does not consent to additur and the amount of damages awarded by the jury to Darrell and LaFonne Frye is disputed. Accordingly, the motion by Darrell and LaFonne Frye for additur pursuant to Tenn. Code Ann. § 20-10-101 is **DENIED**. The motion for additur is properly treated as a motion for new trial. *Jimkoski*, 247 Fed. Appx. at 663; *Tezak*, 33 Fed. Appx. at 177-78; *Clay*, 2000 WL 191936, at ** 3-4.

**B.**     **Standard of Review: Motion For New Trial Fed. R. Civ. P. 59**

This Court's diversity jurisdiction has been invoked pursuant to 28 U.S.C. § 1332. In diversity cases, federal law governs the decision whether to grant a new trial under Fed. R. Civ. P. 59. *Rush v. Illinois Central Railroad Co.,* 399 F.3d 705, 727 (6th Cir. 2005); *Conte v. General Housewares Corp.,* 215 F.3d 622, 637 (6th Cir. 2000); *Toth v. Yoder. Co.,* 749 F.2d 1190, 1197 (6th Cir. 1984).

Fed. R. Civ. P. 59(a)(1)(A) provides that the Court in its discretion may grant a new trial on all or some of the issues and to any party "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Generally, this Court may grant a new trial under Rule 59 for three reasons: (1) the verdict is against the weight of the evidence; (2) the

damages award is excessive; or (3) the trial was influenced by bias, prejudice, or other unfairness to the moving party. *Mike's Train House,* 472 F.3d at 405; *Conte,* 215 F.3d at 637; *Holmes v. City of Massillon,* 78 F.3d 1041, 1045 (6th Cir. 1996). Darrell and La Fonne Frye move for a new trial on the ground that the jury's verdict is contrary to the evidence and the award of damages is inadequate to compensate them for their fire losses within the coverage limits in the insurance policy.

When deciding a Rule 59 motion for new trial, the Court compares the opposing proofs and weighs the evidence. The Court may set aside the jury's verdict only if the verdict is unreasonable and against the clear weight of the evidence. *Nolan v. Memphis City Schools,* 589 F.3d 257, 264 (6th Cir. 2009); *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005); *Conte,* 215 F.3d at 637; *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000); *Holmes,* 78 F.3d at 1047-48; *United States v. L.E.Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993). While the Court has a duty to intervene and grant a new trial in appropriate cases, a jury's verdict should be accepted if it is one which could reasonably have been reached. If a reasonable jury could reach the challenged verdict, a new trial is improper. *Nolan,* 589 F.3d at 264; *Rush,* 399 F.3d at 727; *Conte,* 215 F.3d at 637; *Holmes,* 78 F.3d at 1048.

A motion for new trial should be denied if the jury's verdict is one is one that reasonably could have been reached, regardless of whether the trial judge might have rendered a different decision were the judge the trier of fact. *Nolan,* 589 F.3d at 264; *Knight v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 136 Fed. Appx. 755, 761 (6th Cir. 2005); *Walker v. Bain*, 257 F.3d 660, 673 (6th Cir. 2001); *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996); *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir. 1994). A jury's

verdict is not unreasonable merely because different inferences and conclusions could have been drawn from the evidence or because other results are more reasonable. *Nolan,* 589 F.3d at 264; *McDonald*, 409 F.3d at 728; *Strickland v. Owens Corning ,* 142 F.3d 353, 357 (6th Cir. 1998); *L.E.Cooke Co.*, 991 F.2d at 343; *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992).

The Sixth Circuit cautions that the scope of review of an award of damages by a jury is extremely narrow. The remedy of a new trial on the ground of inadequate or insufficient damages is appropriate only where the evidence indicates that the verdict awards damages in an amount that is substantially less than unquestionably proved by the undisputed evidence. If the jury's verdict is reasonable and supported by some competent, credible evidence, it is not an abuse of discretion for the trial court to deny a motion for new trial on damages. *Moore v. Tennessee*, 267 Fed. Appx. 450, 453 (6th Cir. 2005); *Jimkoski*, 247 Fed. Appx. at 663; *Bell v. Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005); *Walker*, 257 F.3d at 674; *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996). A motion for new trial on damages is appropriate where the jury's award bears no relation to the uncontroverted evidence. *Jimkoski*, 247 Fed. Appx. at 663; *Tezak v. Montgomery Ward & Co., Inc.*, 33 Fed. Appx. 172, 178 (6th Cir. 2002); *Davis*, 1997 WL 159363, at * 3; *Anchor*, 94 F.3d at 1021.

After reviewing the record, the Court concludes that the motion by Darrell and LaFonne Frye for new trial under Rule 59 is **GRANTED IN PART and DENIED IN PART**.

### C.   Fire Loss and Damage to Building

The insurance policy provides coverage for fire loss and damage to the insured building owned by Darrell Frye up to a maximum of $218,500. The jury awarded $35,000.

Darrell Frye presented the following uncontroverted evidence at trial concerning the loss and damage to the building, and the cost of repairs. On February 23, 2008, the Lawson Electric

Company estimated that it would cost $24,250, including labor and materials, to make the necessary electrical repairs to the building. [Defendants' Exhibit D-20]. Brian White from the Lawson Electric Company testified at trial that it would cost more today to do the same work and repairs. Brian White testified that the $24,250 estimate would have to be updated and increased by approximately 10 - 15 per cent be made current. Based on the current estimate from the Lawson Electric Company, it would cost a minimum of $27,000 today to make the electrical repairs to the building.

On May 5, 2009, contractor Carlos Sweatt of Millwright Construction and Maintenance gave a written estimate of $26,677 to replace one I-beam roof support system on the building. [Defendants' Exhibit D-22]. One of the beams of the roof support system needs to be replaced because it is distorted and sagging. Carlos Sweatt testified at trial in support of the estimate and said that the job would cost more today.

On May 5, 2009, Bobby L. Jones, Sr., a home builder doing business as Jones Construction, gave a revised estimate that it would cost $149,875 to perform remodeling work inside the building. Mr. Jones also gave an estimate that it would cost an additional $12,569 to perform demolition work and remove damaged carpet, ceiling tiles, sheet rock on walls, water-damaged wood, and other debris from the building's interior. [Defendants' Exhibit D-19]. The total estimate by Jones Construction was $162,444. Mr. Jones testified at trial in support of these estimates and he said that the costs would be higher today.

Prior to the fire, there was a small leak in the building's roof and Darrell Frye had the roof covered with a tarpaulin. The leak had done some minor damage to the building. After the fire, Darrell Frye obtained an estimate for roof repair. On February 17, 2009, Jerry Wallace with the J.D. Helton Roofing Company, Inc. estimated that it would cost $7,256 to install a new roof on the

building. [Defendants' Exhibit D-21]. Jerry Wallace testified that the there was not a large amount of fire damage to the existing roof. There were two layers of roof. Jerry Wallace proposed to remove the second layer of roof and replace it with a new roof to be installed on of top of the first or original roof. Due to the passage of time and additional water damage to the original roof from rain after the fire, Jerry Wallace estimated that it would cost an additional $3,000 - $4,000 today to install the new roof, over and above the 2009 estimate of $7,256. In other words, Jerry Wallace estimated that the cost today to install the new roof would be a minimum of $10,256.

When all of these estimates are added together, Darrell Frye has presented evidence that the fire loss and damage to his building exceeds the insurance policy limit of $218,500.

| | |
|---|---|
| Lawson Electric Company | $27,000 |
| Millwright Construction and Maintenance | $26,677 |
| Jones Construction | $162,444 |
| J.D. Helton Roofing Company, Inc. | $10,256 |
| Total | $226,377 |

Acuity at trial did not dispute the accuracy and validity of these estimates for repairing the fire damage to the insured building. Instead, Acuity concentrated its efforts on seeking to prove that Darrell Frye deliberately set fire to the building.

After reviewing the evidence, the Court concludes that the jury's verdict and award of $35,000 is unreasonable and against the clear weight of the evidence. The uncontroverted evidence established that the loss and damage to the insured building exceeded the maximum coverage limit of $218,500 in the insurance policy. A reasonable jury could not reach the verdict that the fire loss and damage to the insured building is an extremely low $35,000. The verdict of $35,000 is inadequate to compensate Darrell Frye because it is substantially less than the amount of damages that was unquestionably proved by the undisputed evidence. A new trial on the issue of damages

to the building is appropriate because the jury's award of $35,000 bears no reasonable relation to the uncontroverted evidence.

The motion by Darrell Frye for a new trial is **GRANTED** pursuant to Rule 59 solely on the issue of determining the reasonable value of the fire loss and damage to the insured building.

> **D.**      **Fire Loss and Damage to Business Property of Trinity Learning Center**

The policy provides coverage for fire loss and damage to the business property of the Trinity Learning Center up to a maximum of $20,000. The jury found that the reasonable value of the fire loss and damage to the Trinity Learning Center's business property is $4,500.

The jury's verdict is reasonable and is not against the clear weight of the evidence. The verdict of $4,500 is supported by the evidence. The evidence presented at trial by Darrell and LaFonne Frye on this claim is vague and weak. Although LaFonne Frye was the owner and operator of the Trinity Learning Center, she did not testify herself concerning the current value of the numerous items of property that she claims were damaged or destroyed by the fire. Instead, LaFonne Frye relied on the testimony of Darrell Frye.

Darrell Frye was familiar with the Trinity Learning Center since he helped his wife operate the business. Darrell Frye testified that the value of the loss to the business property of the Trinity Learning Center exceeded the insurance policy limits of $20,000. After the fire occurred, Darrell Frye filled out and provided to Acuity a property inventory for the Trinity Learning Center. The inventory listed each item of damaged property claimed by the Trinity Learning Center, the year the items were purchased, and the estimated cost when purchased. The three-page inventory was introduced into evidence as Defendants' Exhibit D-24. The inventory estimates that the total value of the claimed loss to the business property of the Trinity Learning Center, based on the cost of the

property when purchased, is approximately $40,000.

There are significant deficiencies in the property inventory. The inventory was not prepared and signed by LaFonne Frye, the sole owner of the Trinity Learning Center and the proper insured on this particular claim. LaFonne Frye testified that she did not recall whether she authorized Darrell Frye to sign the inventory.

Darrell Frye did not complete and fill in all of the blanks on the inventory form. Darrell Frye left blank and did not provide information or estimates for each item of damaged property in the following categories: replacement cost, depreciation, actual cash value, and recoverable depreciation. The items listed in the inventory were 1-3 years old at the time of the fire. The inventory does not provide an estimate for either the current replacement cost or fair market value. for each item of damaged property after depreciation. In the absence of evidence establishing the reasonable current value of the damaged property or its current replacement cost, the jury was left with the difficult task of deciphering the incomplete, vague inventory and determining the reasonable value of the fire loss and damages that should be awarded to LaFonne Frye.

The jury was entitled to assess the credibility of LaFonne Frye and Darrell Frye, and determine how much weight to give their self-serving testimony. *Eaton Aerospace, L.L.C. v. SL Montevideo Technology, Inc*., 129 Fed. Appx. 146, 152 (6th Cir. 2005); *Walker*, 257 F.3d at 674. The jury was not required to accept and believe their testimony. The jury's verdict of $4,500 is reasonable and will not be disturbed. A reasonable jury could find that LaFonne Frye failed to sufficiently prove that the value of the loss to Trinity Learning Center's business property met or exceeded the insurance policy limits of $20,000 merely by relying on the deficient property inventory prepared by Darrell Frye. The motion by Lafonne Frye pursuant to Fed. R. Civ. P. 59 for

a new trial on the issue of determining the reasonable value of the fire loss and damage to the business property of the Trinity Learning Center is **DENIED**.

### E.        Loss of Business Income from Trinity Learning Center

 The insurance policy provides coverage for loss of business income derived from the Trinity Learning Center up to a maximum limit of $125,000.  The jury found that LaFonne Frye proved $18,000 in loss of business income.

The fire in the building occurred on the night of February 9, 2009.  As a result of the fire, the Trinity Learning Center closed the next day on February 10, 2009, and did not resume operations.  The jury returned its verdict on April 16, 2010.  The  Trinity Learning Center had been closed for a little more than 14 months when the jury reached its verdict at the trial.

LaFonne Frye argues that the Court should grant a new trial because the verdict of $18,000 is against the weight of the evidence and inadequate to compensate her for loss of business income. LaFonne Frye argues that the evidence proves she had a loss of business income in excess of the insurance policy limit of $125,000.  She contends that during the three-year span from 2006 - 2008, the Trinity Learning Center had an average annual gross income of $184,742.93 and an average annual net income of $68,190.16.  In her motion for new trial [Doc. No. 187, p. 7], LaFonne Frye presents the following chart based on exhibits admitted into evidence at trial showing the Trinity Learning Center's annual gross income and net income for the years 2006 - 2008.

| Description | Exhibit | Gross Receipts | Net Profit |
|---|---|---|---|
| 2006 Federal Income Tax Return | P-44 | $164,260.00 | $24,221.00 |
| 2007 Federal Income Tax Return | P-44 | $177,625.00 | $51,382.00 |
| Income for 2008 | D-15 | $212,343.80 | $128,967.50 |
| | AVERAGE | $184,742.93 | $68,190.16 |

LaFonne Frye did not introduce into evidence a copy of the Trinity Learning Center's federal income tax return for the tax year 2008 which casts doubt on the accuracy of the numbers in her chart for 2008. In any event, the Court finds that the calculations by LaFonne Frye in her chart are incorrect. Before the Court addresses the question whether the jury's verdict is reasonable and supported by the evidence, the Court must first explain how it calculates the claim being made here by LaFonne Frye applying her method of analysis.

Based on the evidence presented at trial, the above chart by LaFonne Frye in her motion for new trial contains at least two significant errors: the net profit in 2008 is not $128,967.50 and the average annual net profit for three years is not $68,190.16. Relying on her Trial Exhibit D-15, LaFonne Frye mistakenly asserts that she has proved the Trinity Learning Center in 2008 earned a net profit of $128,967.50. However, the figure of $128,967.50 actually represents expenses incurred by the Trinity Learning Center in 2008, not net profit. In Trial Exhibit D-15, LaFonne Frye sets forth a financial summary claiming that the Trinity Learning Center in 2008 earned a gross profit of $212,343.80 and incurred $128,967.50 in expenses. The summary does not set forth a specific dollar amount that is alleged to be the net income for 2008. In the chart in her motion for new trial, LaFonne Frye mistakenly takes the $128,967.50 in business expenses for 2008 and she now contends that $128,967.50 is the net profit for 2008. This error has a substantial impact on the proper calculation of her claim regarding the average annual net profit earned by the Trinity Learning Center during the three-year span from 2006 - 2008.

To calculate the net profit for 2008, as set forth in Trial Exhibit D-15, it is necessary to start with the gross profit of $212,343.80 and deduct or subtract the $128,967.50 in expenses which results in LaFonne Frye claiming a net profit in 2008 of $83,376.30.

This correction for the 2008 net profit changes the math calculation in her chart concerning the Trinity Learning Center's average annual net income during the three-year span from 2006 - 2008. According to the data presented by LaFonne Frye, the average annual net income during the three-year span from 2006 - 2008 would be $52,993.10. Assuming *arguendo* that we accept the figures in Defendants' Trial Exhibit D-15 as being accurate and complete, the Court calculates the average annual net income during the three-year span from 2006 - 2008 as follows:

| | |
|---|---|
| Net profit for 2006 | $24,221.00 |
| Net profit for 2007 | $51,382.00 |
| Net profit for 2008 | $83,376.30 |
| TOTAL | $158,979.30 |

When the total net profit of $158,979.30 for the three-year span from 2006 - 2008 is divided by 3, it yields an annual average net profit of $52,993.10. Consequently, LaFonne Frye may plausibly contend that during the three-year span from 2006 - 2008, the Trinity Learning Center had an average annual net income of $52,993.10.

The Court is not saying here that the evidence conclusively proves the Trinity Learning Center had an average annual net income of $52,993.10 during the three-year span from 2006 - 2008. Rather, this is merely a clarification of the Court's understanding of LaFonne Frye's claim and her method of calculating the loss of business income.

The Court bears in mind that after the fire on February 9, 2009, the Trinity Learning Center closed on February 10, 2009, and did not resume operations. When the jury reached its verdict at the trial on April 16, 2010, the Trinity Learning Center had been closed for 14 months. If we take the average annual net income of $52,993.10 for a 12-month period and stretch or extend it to cover the 14-month period when Trinity Learning Center was out of business, LaFonne Frye may be able to plausibly claim that she has suffered a post-fire loss of business net income in the amount of

approximately $61,825. ($52,993.10 average annual net income divided by 12 months = $4,416.10 average net income per month x 14 months = $61,825.40).

In her motion for new trial, Lafonne Frye argues that she proved a loss of business income in excess of the insurance policy limit of $125,000. The Court rejects this argument. Based on the evidence at trial and utilizing her method of analysis described above, the best case scenario for LaFonne Frye is that she is in a position to plausibly claim that she has suffered, at most, a loss of business net income in the amount of approximately $61,825. Any amount greater than this simply is not be supported by the evidence.

LaFonne Frye did not do a good a job of presenting and explaining these essential calculations to the jury at trial to support her claim and method of analysis based on the average annual net income of Trinity Learning Center. Instead of providing the jury with a clear and coherent explanation of how she sought to calculate and prove her claim for loss of business income, LaFonne Frye merely provided the jury with some numbers in documents and left it up to the jury to sort it all out. If there was any confusion on the part of the jury about how to determine the amount of the loss of business income, such confusion was primarily created by LaFonne Frye.

Moreover, the evidence concerning the gross income and net income earned by the Trinity Learning Center during 2008, the year immediately preceding the fire, is weak and not very convincing. LaFonne Frye is the sole owner and the primary manager of the Trinity Learning Center. But when she testified at trial, she barely gave any proof regarding loss of business income. Although LaFonne Frye was able to produce copies of the Trinity Learning Center's federal income tax returns for 2006 and 2007, she failed to produce the 2008 federal income tax return. She contends that her copy of the 2008 federal income tax return was stored in the insured building and

destroyed by the fire. LaFonne Frye never offered a credible explanation as to the reason why she did not bother to obtain records from the United States Internal Revenue Service to corroborate her claim regarding the amount of gross income and net income earned by the Trinity Learning Center during 2008. The failure to produce the 2008 federal income tax return casts a shadow of doubt over the veracity of the large amount she claims for loss of business income. Furthermore, LaFonne Frye did not present supporting testimony from the bookkeeper or accountant who prepared the 2008 federal income tax return for the Trinity Learning Center.

LaFonne Frye sought to prove her claim for loss of business income primarily through the testimony of Darrell Frye. However, Darrell Frye did not maintain the business records and he did not prepare the Trinity Learning Center's federal income tax returns. Trial Exhibit P-44 show that the Trinity Learning Center's 2006 and 2007 federal income tax returns were prepared by outside bookkeeping services or accountants, not by Darrell Frye. It would be reasonable for the jury to entertain some doubts about the credibility or reliability of Darrell Frye's testimony concerning the amount of lost business income.

In the absence of a 2008 federal income tax return, LaFonne Frye presented at trial a summary of what she alleges were the Trinity Learning Center's gross income and expenses for 2008. Defendants' Trial Exhibit D-15. Through the testimony of Darrell Frye, she introduced an IRS Form 1099-MISC federal tax form showing that the State of Tennessee paid $212,343.80 in miscellaneous income to LaFonne Frye in tax year 2008. LaFonne Frye contends that the $212,343.80 is gross income earned by the Trinity Learning Center in 2008. LaFonne Frye further introduced various other documents showing certain business expenses incurred by the Trinity Learning Center in 2008 in the total amount of $128,967.50. The summary does not set forth a

specific dollar amount that is alleged to be the net income for 2008. The summary and the various documents in Trial Exhibit D-15 concerning the amount of business income and expenses in 2008 are in some ways confusing and incomplete. In reviewing Trial Exhibit D-15, a reasonable jury could have substantial doubts about whether LaFonne Frye had presented sufficient credible evidence to prove the Trinity Learning Center's correct business net income in 2008.

The net income of the Trinity Learning Center in 2008 is an especially crucial component in deciding the claim for loss of business income since 2008 is the year immediately preceding the fire on February 9, 2009. Whatever net income was earned by the Trinity Learning Center in 2008 would be very important to establish the trend in net income and provide a relevant basis for predicting or estimating the amount of net income that the Trinity Learning Center could reasonably have been expected to earn in 2009 but for the fire damage.

After reviewing the evidence, the Court concludes that the jury's verdict and award of $18,000 in loss of business income is reasonable, and it is not against the clear weight of the evidence. Plaintiff Acuity disputed and challenged the evidence concerning the loss of business income, especially with regard to LaFonne Frye's failure to produce the Trinity Learning Center's 2008 federal income tax return. A reasonable jury could reach the verdict to award $18,000 for loss of business income.

There are alternative ways that the jury could reasonably determine the post-fire loss of business income based on the evidence. For example, due to the lack of a 2008 federal income tax return for the Trinity Learning Center, it would have been reasonable for the jury to disbelieve and exclude from its calculations LaFonne Frye's relatively weak evidence concerning her claim about the amount of gross income and expenses for 2008. The Trinity Learning Center's 2006 and 2007

federal income tax returns were admitted into evidence. It would have been reasonable for the jury to estimate and determine the post-fire loss of business income by considering the Trinity Learning Center's net income only in 2006 and 2007. The net income in 2006 was $24,221 and the net income in 2007 was $51,382. The average annual net income for the two-year span from 2006-2007 is $37,801.50 ($24,221 + $51,382 = $75,603 divided by 2 = average annual net income $37,801.50). This average annual net income of $37,801.50 is far more reasonable and much closer to the jury's verdict of $18,000 compared to LaFonne Frye's unreasonable demand for the maximum insurance policy limit of $125,000.

A motion for new trial should be denied if the jury's verdict is one is one that reasonably could have been reached, regardless of whether the trial judge might have rendered a different decision were the judge the trier of fact. *Nolan,* 589 F.3d at 264; *Walker*, 257 F.3d at 673; *Powers,* 83 F.3d at 796; *Wayne,* 36 F.3d at 525. A jury's verdict is not unreasonable merely because different inferences and conclusions could have been drawn from the evidence or because other results are more reasonable. *Nolan,* 589 F.3d at 264; *McDonald*, 409 F.3d at 728; *Strickland,* 142 F.3d at 357; *L.E.Cooke Co.*, 991 F.2d at 343; *Woodbridge*, 954 F.2d at 1234. The remedy of a new trial on the ground of inadequate damages is appropriate only where the evidence indicates that the verdict awards damages in an amount that is substantially less than unquestionably proved by the undisputed evidence. If the jury's verdict is reasonable and supported by some competent, credible evidence, it is not an abuse of discretion for the trial court to deny a motion for new trial on damages. *Moore*, 267 Fed. Appx. at 453; *Jimkoski*, 247 Fed. Appx. at 663; *Bell*, 404 F.3d at 1003; *Walker*, 257 F.3d at 674; *Anchor*, 94 F.3d at 1021.

Accordingly, the motion by Lafonne Frye pursuant to Fed. R. Civ. P. 59 for a new trial on

the issue of determining the amount of damages for the loss of business income is **DENIED**.

III.    <u>Conclusion</u>

The motion by Acuity Mutual Insurance Company for judgment as a matter of law notwithstanding the jury's verdict on the issues arson and damages [Doc. No. 189] is **DENIED**. Acuity Mutual Insurance Company's alternative motion pursuant to Fed. R. Civ. P. 59(e) to alter or amend the judgment [Doc. No. 189] is **DENIED**.

The motion by Darrell and LaFonne Frye for suggestion of additur pursuant to Tenn. Code Ann. § 20-10-101 [Doc. No. 186] is **DENIED**.

The motion by Darrell Frye pursuant to Fed. R. Civ. P. 59 for a new trial [Doc. No. 186] is **GRANTED** solely on the issue of determining the reasonable value of the fire loss and damage to the insured building owned by him.

The motion by Lafonne Frye pursuant to Fed. R. Civ. P. 59 for a new trial on the issue of determining the reasonable value of the fire loss and damage to the business property of the Trinity Learning Center trial [Doc. No. 186] is **DENIED**.

The motion by Lafonne Frye pursuant to Fed. R. Civ. P. 59 for a new trial on the issue of determining the amount of damages for loss of business income trial [Doc. No. 186] is **DENIED**.

SO ORDERED.

ENTER this the 30th day of July, 2010.


_____ */s/ R. Allan Edgar* _____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE